# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | CRIM. NO.: 1:09-cr-00005 |
| v. ) | |
| ) | |
| AMIFA KNIGHT ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION REGARDING APPLICATION OF U.S.S.G. §2J1.3(c) IN CALCULATING DEFENDANT'S GUIDELINE RANGE

Finch, Senior Judge

After a jury trial, Defendant Amifa Knight ("Defendant") was convicted of three counts of perjury. She is now before the Court for sentencing. The Government seeks a sentence that is based on application of U.S.S.G. §2J1.3(c), a "cross-reference" sentencing enhancement that punishes certain types of perjury more severely than others. Defendant opposes application of §2J1.3(c). Defendant's initial sentencing hearing occurred on March 25, 2011; however, at that hearing, the court ordered a continuance to allow the parties additional time to file to file briefs regarding application of the contested guideline, which they have done. For the reasons discussed below and given at the April 8, 2011 sentencing hearing, the Court finds that section 2J1.3(c) applies to Defendant.[1]

---

[1] This memorandum opinion is limited to the issue of whether U.S.S.G. §2J1.3(c) applies in determining Defendant's guideline range and is a supplement to the Court's April 8, 2011 statement on the record during Defendant's sentencing hearing of why §2J1.3(c) applies.

I.  **Background**

On May 12, 2008, Amon Thomas and Shadrock Frett were involved in a shootout. Each sustained gunshots wounds and were admitted to the Juan Luis Hospital ("JLH") on that day. Thomas was discharged several days later. On May 21, 2008, at about 3:30 a.m., six masked and heavily armed gunmen entered JLH, accessed two secured doors, proceeded directly to Frett's room and shot him to death.

Because of the circumstances of the attack, law enforcement focused its efforts on individuals with access to JLH's security systems. The investigation lead police to Defendant, an admissions clerk at JLH, who was one of only two hospital employees that had accessed Frett's patient records and obtained his room number the night before he was murdered. On January 26, 2009, Defendant was questioned by an FBI agent and stated that she did not recall accessing Frett's records nor speaking to her then boyfriend, Halik Milligan, the night before Frett was shot.

The following day, January 27, 2009, Defendant was arrested for making false statements to the FBI agent. She was mirandized and interrogated by law enforcement agents. During that interrogation, police confronted her with cell phone records and other evidence that contradicted her prior statements to the FBI agent. Defendant then admitted that she accessed Frett's records the night before he was murdered at the behest of Halik Milligan and that she gave him Frett's room number. Defendant was then indicted for making false statements to a federal officer in violation of 18 U.S.C. § 1001(a)(2).

Shortly thereafter, Defendant moved to suppress her January 27, 2009 statements. Defendant testified at the suppression hearing that the interrogating agents did not properly

2

advise her of her *Miranda* rights and that they intimidated her into making the alleged admissions, including by slamming down a chair during the interrogation.  During her cross-examination, Defendant was again questioned about the events of May 20, 2008 and made the statements that formed the basis of her perjury charges *to wit*, that she had accessed Frett's hospital records three or four times to obtain his room number (instead of only once), that she accessed Frett's patient record in response to three phone calls that were directed to her by the hospital operator from individuals who wanted to visit Frett (instead of at the behest of Halik Malligan), and that Halik Milligan was a friend of Frett who wanted to visit him at the hospital.  Despite Defendant's perjurious statements, the Court denied her motion to suppress.

About four months after the suppression hearing, the Government filed a superseding indictment against Defendant, adding four counts of perjury for statements she made at the suppression hearing and one count of conspiracy to murder Shadrock Frett.  At trial, Defendant was acquitted of making false statements to a federal agent and conspiracy to murder Frett, but was convicted on three counts of perjury.  *See United States v. Knight*, 2011 U.S. Dist. LEXIS 16847 (D.V.I. Feb. 18, 2011) (Finch, J.) (discussing sufficiency of the evidence adduced at Defendant's trial and denying her post-trial motion for acquittal).

II.   <u>Analysis</u>

Section 2J1.3 of the Sentencing Guidelines governs the calculation of a convicted perjurer's guideline range and establishes a base offense level of 14.  U.S.S.G. §2J1.3(a).  However, section 2J1.3(c) is a "cross-reference" stating that: "[i]f the offense involved perjury . . . . in respect to a criminal offense, apply §2X3.1 (Accessory After the Fact) with respect to that criminal offense, if the resulting offense level is greater than that determined above."  Section

3

2X3.1 requires that a defendant's base level be set "6 levels lower than the offense level for the underlying offense" except that "the base offense under this guideline shall be not more than level 30 . . ." U.S.S.G. §2X3.1(a). If section 2J1.3(c)'s "cross reference" applies, Defendant's base offense level would be 30 and her guideline range would be 97-121 months.[2] However, because of the statutory maximum, any sentence for Defendant is capped at five years. 18 U.S.C. § 1621. Thus, if §2J1.3(c) applies, her guideline range would be 60 months.

Application of section 2J1.3(c)'s cross-reference hinges on whether the perjury was "in respect to" Frett's murder. U.S.S.G. §2J1.3(c). Cases instruct that application of the cross-reference guideline and its concomitant enhanced sentence is warranted when the perjury carries the potential to undermine an ongoing criminal investigation or criminal prosecution of a more serious criminal offense – such as murder.[3] *See United States v. Chinnery*, 68 Fed.Appx. 360, 369-70 (3d Cir. 2003) (unpublished) ("The purpose of the cross-reference within § 2J1.3 is 'to treat more severely perjuries that risk an incomplete or an inaccurate ... trial of a criminal offense.'" (quoting *United States v. Suleiman*, 208 F.3d 32, 39 (2d Cir. 2000))); *United States v. Arias*, 253 F.3d 453, 459 (9th Cir. 2001) ("[T]he point of the cross reference is to punish more

---

[2] Section §2A1.1 of the Sentencing Guidelines provides that the base offense level for First Degree Murder is 43. Because section 2X3.1(a)(3)(A) caps the Accessory After the Fact base offense level at 30, that would be Defendant's base offense level if section 2J1.3(c) applied.

[3] This is supported by the Comment to U.S.S.G. §2J1.3: "The Commission believes that perjury should be treated similarly to obstruction of justice. Therefore, the *same considerations* for enhancing a sentence are applied in the specific offense characteristics, and an alternative reference to the guideline for accessory after the fact is made." U.S.S.G. §2J1.3 (emphasis added). The Obstruction of Justice cross-reference guideline (§2J1.2(c)) applies when "the offense involved obstructing the *investigation or prosecution* of a criminal offense…" U.S.S.G. §2J1.2(c) (emphasis added). If the Commission intended that the perjury and obstruction of justice cross-references to §2X3.1 apply in similar situations, it logically follows that the perjury cross-reference applies when the perjury concerns an investigation or prosecution of a criminal offense.

severely (and to provide a greater disincentive for) perjury in, and obstruction of, prosecutions with respect to more serious crimes.").

"[P]erjury that is material to the investigation of a criminal offense will be punished more severely than other sorts of perjury by operation of the cross reference guideline." *United States v. Leifson,* 568 F.3d 1215, 1221 (10th Cir. 2009) (applying cross-reference to perjury committed before a grand jury investigating murder). Thus, "a perjurious statement 'is in respect to a criminal offense where the defendant knew or had reason to know, at the time of his perjury, that his testimony concerned such a criminal offense.'" *Chinnery*, 68 Fed. Appx. at 370 (quoting *United States v. Leon-Reyes*, 177 F.3d 816, 824 (9th Cir. 1999)); *see also United States v. Rude*, 88 F.3d 1538, 1543 (9th Cir. 1996) (explaining that perjury is in respect to a criminal offense "so long as the defendant knew or had reason to know, at the time of his perjury, that his testimony concerned such a criminal offense.").

Here, the evidence adduced at Defendant's trial demonstrates that at the time of the suppression hearing, Defendant knew or had reason to know that her statements concerned Frett's murder.[4] At the time of the suppression hearing, she was well aware that law enforcement agents were investigating the murder as she had been questioned about the murder several times by police prior to the suppression hearing. Moreover, her perjurious statements were made in response to questions "about what transpired on May 20, 2008," the evening before Frett's murder. *Knight*, 2011 U.S. Dist. LEXIS 16847, at * 27 (citing Suppression Tr. at

---

[4] The Government argues that U.S.S.G. §2J1.3 applies to Defendant because when she testified at the suppression hearing, she knew that law enforcement agents were investigating Frett's murder, but nonetheless made false statements, under oath, that were "clearly designed to protect Milligan (and herself) from suspicion of murder . . . [and] were clearly concerning the murder." (Govt.'s Suppl. Br. 5, Doc. 131.)

5

134-144.)  She thus had reason to know that her statements concerned Frett's murder.  *Chinnery*, 68 Fed. Appx. at 370.

Second, her perjurious statements – that she had accessed Frett's hospital records three or four times to obtain his room number, that she accessed Frett's patient record in response to three phone calls that were directed to her by the hospital operator from individuals who wanted to visit Frett, and that Halik Milligan was a friend of Frett who wanted to visit him at the hospital – were "in respect to" Frett's murder because they were "material to the investigation of" Frett's murder.  *Leifson,* 568 F.3d at 1221.  As previously noted by the Court, Defendant's perjurious statements "were part of her attempt to legitimize her access to Frett's room number by making it seems as though she did so in response to multiple requests for his room number by people wishing to visit him." *Knight*, 2011 U.S. Dist. LEXIS 16847, at *37.  "[A]t trial, the Government presented substantial evidence that Defendant concocted this story to hide the fact that she obtained Frett's room number solely at the behest of her boyfriend, Halik Milligan, and that doing so was a serious violation of hospital protocol."  *Id.* at *17.  These perjurious statements concerned the potential (and likely) source of the murder perpetrators' knowledge of Frett's room number, a fact that Defendant did (or had reason to) understand when she testified falsely.[5]  Her perjury carried the risk of interfering with Frett's murder investigation and application of the cross-reference enhancement is therefore appropriate.

---

[5] The Court is aware that Defendant was acquitted of conspiracy to murder Frett.  However, application of §2J1.3(c) does not depend on a finding of Defendant's complicity in Frett's murder, only that her perjury was "in respect to" his murder.

6

### III.  Conclusion

The Sentencing Commission has seen fit to punish certain species of perjury more than others, including perjury that is material to an ongoing criminal investigation. Defendant's perjury was material to the investigation of the murder of Shadrock Frett. Furthermore, Defendant knew or had reason to know that her perjury concerned the murder of Frett. Accordingly, U.S.S.G. §2J1.3(c)'s cross-reference applies to the calculation of Defendant's guideline range.

DATED:  April 13, 2011  　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　RAYMOND L. FINCH
　　　　　　　　　　　　　　　　　　　　　　　SENIOR U.S. DISTRICT JUDGE